Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the Ninth Circuit. My chambers are in Anchorage, Alaska. I'm joined today by my colleague, Judge Paul Watford, whose chambers are in Pasadena, California, and we are delighted to be joined by Judge Rothstein, who's here to help us out with our calendar today. We want to thank her for her participation. The first case on the calendar is 12-17500 McClurg v. County of Maricopa, and it's my understanding, Madam Clerk, that we have Mr. Hobson appearing for the appellant telephonically. Sir, can you hear me? Yes, Your Honor, I can. Thank you. Great. Thank you. Do we have counsel for the County of Maricopa present? Yes? Okay. Thank you. Well, I'm not sure if we're gonna need to hear from you all or not. If we do, I'll ask you to come to the microphone, but I just want to make sure that Mr. Hobson's aware that you're present in the courtroom. Mr. Hobson, in this case, we've asked for this somewhat unusual appearance because we're a little baffled. We first received a request to withdraw because of the expense of travel and entered an order granting permission to appear telephonically to all counsel, and then we received notice that the case had settled, but from our vantage point, we don't have any indication of the terms of the settlement, which may or may not be appropriate to discuss today. We don't know whether there was a confidentiality agreement, but as far as we can tell, there is a minor here in this case and also a representation of an estate. Neither party would be allowed to participate without counsel. So my first question is whether or not any substitute counsel was arranged. No, Your Honor, this is a conversation that occurred between myself and Mrs. McClurg, who was communicating with her boys who were also working but away from home, and the terms were fairly straightforward. It was an offer of settlement from the county that I felt that I had an ethical obligation to convey to her. She then discussed it with her boys. I asked her to please call me, have them call me, or call me back with her and them. She called the next day and said they had discussed it and they wanted to accept what the county had proposed. Okay. And so it was kind of a problem. I mean, I was prepped, and I appreciate the court's courtesy in permitting me to appear telephonically, and I realize that is unusual. Your telephonic appearance is no problem at all, counsel, and it's not my intention to evade any attorney-client privilege. So we have a little bit of a stilted conversation, but it is a concern that there are folks, apparently litigants here who may be minors or estates, and so of course our concern was whether they're represented by counsel going forward. There's another issue, which is we can't tell from the papers we have here exactly what has been settled. There's apparently a settlement involving what I think is a wrongful death claim, but we can't tell that there's any discussion of a personal injury claim. It's not part of the appeal. Is that part of the settlement agreement? My understanding from, and you can ask the county if I was correct about this, my understanding would that this would resolve all matters between the litigants with this particular resolution. What, you know, I don't think I'm going too far outside of the lines to say that my case, which I will tell you in the ordinary course, are relatively de minimis. They did not want any of that, and they wanted to know what would happen if there were collections, and I described to them briefly how collections work, and they said that they didn't want that. That was not something that they ever bargained for, that this was, you know, it's not my habit to accept those kinds of settlements in the ordinary course, but that's what I thought it was. It was a settlement offer, and I conveyed it, and I was informed that they wanted to accept it. I'm not sure, this may be raising more questions than it answers, but what I would like to hear from counsel is whether or not there was discussion and awareness of this other personal injury claim in the complaint. We can't see that from here. I think we were aware of all of the outstanding claims. The personal injury claim that survives, I think, has some problems, and that was part of the appeal today. My understanding was that this would resolve all outstanding matters. They wanted to be released from, you know, these things going forward. We did not draft out a, you know, a 10-12 page settlement agreement. I'm sorry, you didn't draft what? We did not draft a 10 to 12 page settlement agreement at the typical, you know, lengthy settlement with confidentiality and releases and non-disparagement and all the other stuff that goes into it. Is there anything more than the stipulation for dismissal that we have in our file? That's all you have. Do either of my colleagues have questions? I have a question. At the time you discussed settlement with your clients, was it their understanding that they still had a viable personal injury claim, or didn't they understand that they might have a viable claim? Your Honor, I'm not sure I detailed it that sufficiently. They understood that there was a federal claim, and they understood there was a state law claim that were an issue. They're relatively unsophisticated people. I don't think that they necessarily know what those mean. Their claims against the sheriff and the county for injury done to their father and their family, I think, is how they would probably proceed. I don't know how to best characterize that. These are not sophisticated folks, Your Honor. Right. But what did you tell them about that state law claim? Did they think that state law claim or were they believing that state law claim had been dismissed mistakenly or that it was still a claim that they could pursue and therefore they knowingly chose to settle it? What did you tell them about that claim? I can't tell you that I provided that amount of detail. The focus was on the outstanding costs. Their concern was what that means to them in terms of a writ of garnishment being served or a writ of attachment being served, and they did not want that. Garnishment? That was the primary focus, Your Honor. Whose costs? What costs were they concerned about? There's an award of cost, an amount of $5,000 that Judge Burns assessed, which is a cost that will be, if they put it in for collections, will be something that will be pursued against the plaintiffs. Counsel, I think we have an outstanding motion to withdraw. Is that correct? Yes, Your Honor. All right. Are there any other outstanding motions? No. Actually, Your Honor, I'm not sure that's correct. I think the Court denied my motion, but with leave to re-urge it. I'm sorry. But with leave to renew? Yes. Without prejudice is what I think it is. I see. Is it — I think I do remember that. Is it your continued request to be granted permission to withdraw? Yes, Your Honor. All right. Is there anything further on this matter, Judge Wofford? Counsel, do you wish to be heard? Your Honor, Cheryl Flagman, appearing on behalf of Maricopa County. I think just for purposes of clarification, Mr. Hobson and I had had some discussions about essentially a complete walk away from all claims in exchange for a waiver of costs and attorney's fees, and I think that's how the discussion with his clients came about. I appreciate the clarification, and I appreciate your participation today. And she is correct, Your Honor. I apologize. We've got it now. Thank you for clearing that up for us. Your Honors, good morning. I'm Gary Fidel. I represent appellee Joseph Arpaio. I benefited from the settlement negotiations between Mr. Hobson and Ms. Flagman, so my client is part of the stipulation to dismiss. Thank you. Thank you all. I think there's nothing further that we're going to need to take up on this matter on record. So we'll move on to the next matter, and thank you all for your participation.
judges: Christen, Watford, Rothstein